IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Stephen Bernard Jackson, | ) | Civil Action No. 8:12-cv-01323-JDA |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin[1], | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules
73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition
by a magistrate judge; and the Honorable Timothy M. Cain's Order of reference.  Plaintiff
brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final
decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's
claims for disability insurance benefits ("DIB").   For the reasons set forth below, the
decision of the Commissioner is affirmed.

**PROCEDURAL HISTORY**

In March 2010, Plaintiff filed an application for DIB, alleging an onset of disability
date of  January 1, 2008.[2]  [See R. 11.]  The claim was denied initially on June 11, 2010
[R. 58–59], and was denied on reconsideration by the Social Security Administration ("the

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February13, 2013. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael
J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the
last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]The record before this Court does not include the March 2010 application for DIB.  At the hearing before
the ALJ, the Plaintiff amended the alleged onset date to June 1, 2006.  [R. 29.]

Administration") on October 8, 2010 [R. 60–61]. Plaintiff requested a hearing before an administrative law judge ("ALJ") [*see* R. 69–70 ], and on July 11, 2011, ALJ Augustus C. Martin conducted a de novo hearing on Plaintiff's claim [R. 24–57].

On July 28, 2011, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") from June 1, 2006, through the date of the decision. [R. 8–23.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through June 30, 2011, and had not engaged in substantial gainful activity from June 1, 2006, his alleged onset date, through June 30, 2011, the date last insured. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: familial adenomatous polyposis, chronic diarrhea, status post total colectomy, pulmonary embolism, asthma, and headaches. [R. 13, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 13, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), noting that "[s]edentary work involves lifting/carrying light items; and occasionally lifting/carrying up to 10 pounds, as well as standing or walking for 2 hours in an 8-hour workday, and sitting for 6 hours in an 8-hour workday." [R. 15, Finding 5 & n.1.] The ALJ determined that Plaintiff could occasionally

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

climb ramps and stairs, as well as balance, stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds; and must avoid even moderate exposure to hazards. [R.15, Finding 5.] The ALJ also restricted Plaintiff to jobs with close access to a restroom. [R. 15, Finding 5.]  Based on this RFC finding, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work [R. 18, Finding 6]; however, based on his age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [R. 19, Finding 10]. On this basis, the ALJ found Plaintiff had not been under a disability, as defined by the Act, from June 28, 2011, through the date last insured, June 30, 2011.   [R. 20, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 7] but the Council declined review [R. 1–3].  Plaintiff filed this action for judicial review on May 18, 2012.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues

1.    the ALJ performed a flawed Step 3 analysis because he did not properly consider the combined effect of Plaintiff's impairments [Doc. 19 at 6–8; Doc. 22 at 2–3]; and

2.    the ALJ performed a flawed Step 4 analysis because he conducted a flawed credibility analysis and failed to properly explain the credibility analysis [Doc. 19 at 8–10; Doc. 22 at 3–5].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ

1.    adequately considered the combined effects of Plaintiff's impairments because the ALJ discussed each impairment both individually and in combination [Doc. 21 at 9–13]; and

2.    adequately explained his findings that Plaintiff was not entirely credible and based that finding upon reasonable consideration of proper regulatory factors [*id.* at 14–20].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76

4

F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).   Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"   *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."   *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).   *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.

5

1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

6

> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699

8

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ

must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

C.    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

D.    ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. § 404.1569a(c)(1).

perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th

13

Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the

circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition,

*Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).   The Commissioner thereafter

issued the following "Policy Interpretation Ruling":

>   This Ruling supersedes, only in states within the Fourth
>   Circuit (North Carolina, South Carolina, Maryland, Virginia and
>   West Virginia), Social Security Ruling (SSR) 88-13, Titles II
>   and XVI: Evaluation of Pain and Other Symptoms:
>
>   ...
>
>   **FOURTH CIRCUIT STANDARD:** Once an underlying
>   physical or [m]ental impairment that could reasonably be
>   expected to cause pain is shown by medically acceptable
>   objective evidence, such as clinical or laboratory diagnostic
>   techniques, the adjudicator must evaluate the disabling effects
>   of a disability claimant's pain, even though its intensity or
>   severity is shown only by subjective evidence.  If an underlying
>   impairment capable of causing pain is shown, subjective
>   evidence of the pain, its intensity or degree can, by itself,
>   support a finding of disability.   Objective medical evidence of
>   pain, its intensity or degree (i.e., manifestations of the
>   functional effects of pain such as deteriorating nerve or muscle
>   tissue, muscle spasm, or sensory or motor disruption), if
>   available, should be obtained and considered.  Because pain
>   is not readily susceptible of objective proof, however, the
>   absence of objective medical evidence of the intensity,
>   severity, degree or functional effect of pain is not
>   determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Combination of Impairments at Step 3**

Plaintiff contends the ALJ failed to consider the combined effect of Plaintiff's impairments.  [Doc. 19 at 7.]  Plaintiff argues

> the ALJ failed to consider whether a worker who suffered from severe bouts of diarrhea, adenomatous polyposis requiring periodic polyp removal procedures, pulmonary embolism

> requiring anticoagulant treatment, asthma, and headaches could maintain full-time competitive employment despite the fact that an RFC could theoretically be drawn to accommodate each individual impairment.

[Doc. 19 at 7–8.]  On the other hand, the Commissioner contends the ALJ in this case discussed all of Plaintiff's severe impairments in detail, considering them each individually and in combination.  [Doc. 21 at 11.]  The Commissioner further contends that the methodical and exhaustive articulation that Plaintiff seeks is neither required nor pragmatic and that the ALJ provided a more than adequate path for subsequent reviewers to follow how he considered and weighed the evidence in relation to his findings.  [Doc. 21 at 12].

> As stated in the Act:

>> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.

42 U.S.C. § 423(d)(2)(B).  If an ALJ finds a claimant has a severe impairment or combination of impairments, the ALJ must consider all of the claimant's impairments, including non-severe impairments and the limitations imposed by all the claimant's impairments, at the remaining steps of the sequential analysis.  *Id.*; SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  The ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Walker*, 889 F.2d at 50 ("As a corollary to th[e] rule [that the ALJ must evaluate the combined effect of the claimant's impairments], the ALJ must adequately

explain his or her evaluation of the combined effects of the impairments." (citing *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985)).  Courts in this district have found the ALJ's discussion and analysis adequate where a reading of the decision as a whole makes clear that the ALJ considered the combination of impairments.  *See Brown v. Astrue*, No. 0:10-cv-01584-RBH, 2012 WL 3716792 (D.S.C. Aug. 28, 2012) (holding the decision as a whole makes clear that the Commissioner considered the combined effect of a claimant's impairments); *Thornsberry v. Astrue*, No. 4:08-4075-HMH, 2010 WL 146483 *5 (D.S.C. Jan. 12, 2010) ("[W]hile the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments.").

Here, the ALJ found Plaintiff had the following severe combination of impairments: familial adenomatous polyposis, chronic diarrhea, status post total colectomy, pulmonary embolism, asthma, and headaches.  [R. 13, Finding 3.]  The ALJ specifically considered each impairment individually as follows:

> The undersigned has specifically considered whether the claimant's asthma meets Listing 3.03 of the Listing of Impairments.  The undersigned finds that it does not meet the listing, as it has not resulted in evidence of a significantly reduced FEVI or FVC, evidence of a chronic impairment of gas exchange, or asthma attacks, in spite of prescribed treatment, occurring at least once every two months or at least six times a year.
>
> The undersigned has evaluated the claimant's heart disease according to Listing 4.02 of the Listing of Impairments.  The undersigned finds that the claimant's heart disease does not meet the Listing.  The claimant's heart failure has not been characterized by a medically-documented persistence of systolic failure with left ventricular end diastolic dimensions

greater than 6.0 centimeters or ejection fraction of 30% or less during a period of stability or diastolic failure with left ventricular posterior thickness totaling 2.5 centimeters or greater with an enlarged left atrium at least 4.5 centimeters with normal or elevated ejection fraction during a period of stability. The claimant's heart disease has not resulted in one of the following: persistent symptoms of heart failure which very seriously limits the ability to perform activities of daily living independently, three or more separate episodes of acute congestive heart failure within a consecutive twelve month period, or an inability to perform on an exercises tolerance test at a workload equivalent to 5 METs or less. (20 C.F.R., Pt. 404, Subpt. P, App. 1, § 4.02).

With regard to the claimant's familial adenomatous polyposis, there is no listing for this impairment; however, the undersigned has reviewed the requirements of Malignant Neoplastic Diseases Listings 13.17 (*Small intestine*), and 13.18 (*Large intestine*), due to the tendency of this impairment to develop into colon cancer, and finds that the requirements of such are not met in this case. These listings require evidence of carcinoma, sarcoma, carcinoid, or adenocarcinoma, which is inoperable, unresectable, or recurrent, or has metastasized beyond the regional lymph nodes, or recurrent squamous cell carcinoma ofthe anus after resection. There is no evidence of such recurrence, inoperability, unresectability, or metastasis in this case.

The claimant's chronic diarrhea/gastrointestinal bleed does not meet or medically equal Listing 5.06 in the Listing of Impairments. The claimant's chronic diarrhea/gastrointestinal bleed does not meet paragraph A of listing 5.06 because it has not been accompanied by obstruction of stenotic areas in the small intestine or colon with proximal dilatation, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two consecutive occasions at least 60 days apart within a consecutive six-month period. It does not meet paragraph B of Listing 5.06 because it has not been characterized by at least two of the following despite continuing treatment as prescribed and occurring within the same six-month period: anemia with hemoglobin of less than 10.0 g1DL, present at at least two evaluations at least 60 days apart; serum albumin of 3.0 g1dL or less, present at at least

two evaluations at least 60 days apart; clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present at at least two evaluations at least 60 days apart; perineal disease with a draining abscess or fistula with pain that is not completely controlled by prescribed narcotic medication, present at at least two evaluations at least 60 days apart; involuntary weight loss of at least 10 percent from baseline, present at at least two evaluations at least 60 days apart; or a need for supplemental daily enteral nutrition via a gastronomy or daily parenteral nutrition via a central venous catheter. There is no evidence that the claimant has experienced involuntary weight loss.

The undersigned has reviewed Listing 11.14 of the Listing of Impairments (*peripheral neuropathy*), with regard to the claimant's allegations of headaches and requiring a cane to ambulate, and find the requirements of such are not met in this case. There is no evidence that the claimant's reported remote history of knee surgery has been accompanied by disorganization of motor function as described by 20 CFR Part 404, Subpart P, Appendix 1, Section 11.04(B), in spite of prescribed treatment. Additionally, at the hearing the claimant testified that he had fully recovered from his knee surgery in 1994. Furthermore, his headaches have not been characterized by disorganization of motor function as required by this listing.

[R. 14–15.] After discussing each individual impairment, the ALJ explicitly stated that he considered the combined effects of Plaintiff's severe impairments and determined that the findings related to them are not at least equal in severity to those described in Listings 3.03, 4.02, 5.06, 11.14, 13.17 and 13.18. [R. 15.] Specifically, the ALJ concluded that

claimant's combination of impairments including familial adenomatous polyposis, chronic diarrhea, status post total colectomy, pulmonary embolism, asthma, and headaches has not resulted in the equivalent of Listings 3.03, 4.02, 5.06, 11.14, 13.17, or 13.18[], as the undersigned can find no limitations in the claimant's ability to carry out his activities of

21

> daily living and work at the residual functional capacity below.
> Therefore, the claimant's treatment records fail to demonstrate
> that his ability to perform the residual functional capacity below
> is compromised by the combination of his impairments.

[R. 15.]

The ALJ discussed his consideration of Plaintiff's individual impairments as well as the combined effects of his impairments on his total disability. [R. 15.] Although Plaintiff takes issue with the ALJ's conclusion that "the evidence failed 'to demonstrate that the ability to perform the residual functional capacity below is compromised by the combination of his impairments,'" the law is settled that the ALJ's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process."[7] 20 C.F.R. § 404.1523. Additionally, Plaintiff never contends that any of the Listings are met by Plaintiff's impairments singly or in combination. The ALJ expressly considered the elements of each Listing referenced and, even when considering the combination of impairments, found that no Listing was met. Thus, the Court finds that the ALJ adequately considered the combination of Plaintiff's impairments at Step 3.

**Credibility Determination at Step 4**

Plaintiff alleges the ALJ improperly "pinned most of his credibility analysis on the proposition that [Plaintiff] engages in a 'vast array' of activities of daily living." [Doc. 19 at 9.] Plaintiff contends the ALJ failed to appreciate the unreliability of Plaintiff's ability to

---

[7]The Court does not find that the ALJ's analysis at Step 3 was flawed merely because he referenced Plaintiff's ability to perform the RFC. The ALJ properly considered Plaintiff's impairments in combination and explained his findings regarding the effect of those impairments, singly and in combination, on Plaintiff's ability to work. The Court does not conclude, as Plaintiff has, that the RFC analysis "informed" the consideration of Plaintiff's impairments in combination. [*See* Doc. 19 at 7.]

complete chores, his need for rest between chores, and the episodic nature of his impairments.  [*Id.*]  Plaintiff also contends the ALJ failed to explain how the evidence he cites actually undermines Plaintiff's credibility.  [*Id.* at 10.] The Commissioner, on the other hand, argues Plaintiff "seeks to hold the ALJ to an untenably high standard of articulation that is not required by either the regulations or the standards outlined in Fourth Circuit case law." [Doc. 21 at 14.] The Commissioner asserts that the ALJ "'thoroughly discussed the evidence relating to [Plaintiff's] impairments and limitations, and the record clearly demonstrates his consideration of the appropriate issues.'" [Doc. 21 at 15.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a non-exhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication taken to alleviate the symptoms; (5) treatment, other than

medication, received to relieve the symptoms; and (6) any measures the claimant has used

to relieve the symptoms. 20 C.F.R. § 1529(c)(3). If the ALJ points to substantial evidence

in support of his decision and adequately explains the reasons for his finding on the

claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at

176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make

credibility determinations, or substitute [its] judgment for that of" the agency).

In this case, the ALJ accepted that Plaintiff's impairments could reasonably have

been expected to cause some of his alleged symptoms, but that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of these symptoms were not fully

credible to the extent they were inconsistent with the RFC assessment. [R. 17.] The ALJ

explained the basis for his determination as follows:

> Following a thorough review of the evidence of record, the
> undersigned finds that the claimant's reports to his treating
> and examining physicians, as well as findings upon objective
> examination, are inconsistent with the claimant's testimony of
such significant complaints of pain and dysfunction. Specifically, the claimant's activities
of daily living are inconsistent with his allegations of such significant functional limitations,
but are fully consistent with the residual functional capacity described above. The
evidence of record indicates that despite the claimant's complaints and allegations, he has
admitted that he was able to drive, watch television, read, work around the house, vacuum,
do laundry, cook, and wash dishes. He reported being able to dress himself and tend to
his own hygiene. The claimant shops for food and clothing. He was able to recall that the
last show he watched was about World War II, and the Battle of Normandy. As previously
noted, although the claimant reported difficulty concentrating, he is able to use the
computer to play war games, noting that they make him "think," and strategize. While the
claimant testified that he experienced fatigue, and so informed his physicians, the records
reveal the claimant denied fatigue, July and August 2009, during a treatment period of
acute illnesses; namely, his pulmonary embolism (Exhibit IF).

[R. 17–18.] The ALJ conducted a proper analysis in determining the credibility of Plaintiff's subjective complaints by fully explaining his decision and citing relevant evidence, and the ALJ's decision is supported by substantial evidence.   For example, in determining Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered Plaintiff's subjective complaints in conjunction with his ability to perform activities of daily living and found those activities of daily living were inconsistent with Plaintiff's allegations of significant functional limitations.   [R. 17; *see* 20 C.F.R. § 404.1529(c)(3)(i) (stating a claimant's daily activities is one factor the ALJ will consider will evaluating a claimant's symptoms, including pain).] The ALJ also notes that, "[w]hile the claimant has chronic diarrhea, records show that since his surgery in 1994, he has managed this symptom with Imodium.   The claimant reported that his diarrhea is worse with eating, and that it is relieved with taking either Lomotil or Imodium."   [R. 17.]   Additionally, the ALJ noted that he "accounted for the claimant's reported chronic diarrhea in the above residual functional capacity by requiring he have close access to a restroom."   [R. 18.]   The ALJ further found that Plaintiff's allegations of being persistently tired are not supported by objective medical evidence of record and that Plaintiff had denied fatigue during a treatment period for his pulmonary embolism.   [R. 18.]   Therefore, the Court concludes the ALJ's credibility determination does not provide a basis for reversing the Commissioner's decision.

## CONCLUSION

Wherefore, based upon the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 16, 2013
Greenville, South Carolina